NOTICE
Decision filed 03/08/18. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2018 IL App (5th) 170380

NO. 5-17-0380

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| WILLIAM DANIEL WHITEHEAD, | ) | Circuit Court of |
| | ) | Johnson County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 15-D-21 |
| | ) | |
| STEPHANIE NEWCOMB-WHITEHEAD, | ) | Honorable |
| | ) | James R. Williamson, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Chapman and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1      Petitioner, William Daniel Whitehead, appeals from a portion of a final parenting plan and judgment entered in the dissolution of his marriage to respondent, Stephanie Newcomb-Whitehead. The issues raised in this appeal are as follows: (1) did the trial court err in allocating parenting time by not including an analysis of the factors in section 602.7 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/602.7 (West 2016)), (2) did the trial court err in entering the parenting time schedule, (3) did the trial court err in ordering an eight-hour right of first refusal rather than a four-hour right of first refusal when substitute child care is necessary, and (4) did the trial court err in denying petitioner's motion to reconsider regarding child support? We affirm.

1

¶ 2                                    BACKGROUND

¶ 3     The parties were married on June 17, 2006. Three children were born during the marriage, D.W. (born October 5, 2007), A.W. (born June 9, 2010), and G.W. (born March 3, 2012). Respondent also has a daughter from a prior relationship. The parties separated on February 6, 2015. Petitioner filed his petition for dissolution on March 26, 2015.

¶ 4     During the parties' marriage, petitioner went to school to become a nurse. Petitioner is currently an emergency room nurse. As a result, he works shifts. His schedule changed over the course of these proceedings. In July 2016, petitioner's schedule changed, requiring him to work every other weekend. Respondent is an administrative assistant at a counseling center. Her work schedule is flexible. She normally works Monday through Friday. Petitioner earns more than twice what respondent earns. Evidence showed respondent's gross income for 2016 was $35,000, while petitioner's gross income was $80,044.

¶ 5     Brian Trambley was appointed guardian *ad litem.* He interviewed the parties and the children on two occasions, once at petitioner's home and once at respondent's home. He found both parties to be good parents and the children to be happy and well adjusted. In his report, he specifically stated, "In addressing the best interest of the children and the allocation of parenting time pursuant to 750 ILCS 5/602.7, all seventeen factors will be addressed below." He then went on to address each of the 17 factors and analyzed each factor with respect to the instant case. He also noted that "[e]ach parent has given me a proposal for parenting time and they do not differ in great detail." The guardian *ad litem* went on to make his recommendations about parenting time.

¶ 6     A second stage hearing was held on December 12, 2016. A judgment of dissolution was entered the following day. The remaining issues, including parenting time for the three minor

children, maintenance, child support, division of marital debt, petitioner's student loan debt, and dissipation of assets, were reserved. An additional second stage hearing was held on February 7, 2017. The trial court then took the case under advisement.

¶ 7    On March 15, 2017, the trial court issued its ruling via a letter to the parties' attorneys. In the letter, the trial court specifically states: "All evidence, including the guardian *ad litem*'s report and addendum to same, statutory and case law applicable, and the written closing arguments of counsel have been considered." The trial court then (1) ordered petitioner to pay respondent $1470 per month in child support; (2) determined the fate of the marital residence; (3) ordered each party to retain their respective bank accounts, retirement accounts, and cars in his or her possession and waive any claim against the other party's; (4) divided the parties' debt; (5) awarded each party the personal property in his or her possession; (6) found no dissipation of assets; and (7) refused to award maintenance to respondent.

¶ 8    With regard to parenting time the trial court specifically stated, "Regarding the allocation of parenting time for the children, the holiday, summer schedule, and special occasion dates, as this court understands from reviewing both parties' parenting plans, are stipulated to, and this court ratifies and approves the same." The trial court then set a schedule to be followed "during the school year." Respondent's attorney was ordered to prepare a final judgment to include language supporting grounds, allocation of parenting time, and an order for support.

¶ 9    The final parenting plan and judgment was entered by the trial court on June 19, 2017. It specifically provides for parenting time as follows:

> "5. During the school year, the parties shall have the following schedule with the minor children:

a. [Petitioner] shall have every Monday from 8:00 a.m. until Tuesday at 6:00 p.m.

b. [Petitioner] shall have every other weekend from Friday at 6:00 p.m. until Tuesday at 6:00 p.m., beginning Friday, March 24, 2017, and continuing every other weekend thereafter.

c. [Respondent] shall have every Tuesday from 6:00 p.m. until Friday at 6:00 p.m.

d. [Respondent] shall have every other weekend from Friday at 6:00 p.m. until Monday at 8:00 a.m., beginning March 31, 2017, and continuing every other weekend thereafter.

6. During the summer *** the parties shall have the following schedule with the minor children:

a. [Petitioner] shall have every Sunday from 7:00 p.m. until Tuesday at 6:00 p.m.

b. [Petitioner] shall have every other weekend from Friday at 6:00 p.m. until Tuesday at 6:00 p.m. on the same schedule as set forth in Paragraph 5(b) above.

c. [Respondent] shall have every Tuesday from 6:00 p.m. until Friday at 6:00 p.m.

d. [Respondent] shall have every other weekend from Friday at 6:00 p.m. until Sunday at 7:00 p.m., on the same schedule as set forth in Paragraph 5(d) above."

The final parenting plan also states that "each [party] shall have the right of first refusal to parenting time with the children when the other parent is unable to exercise his or her parenting time for a period in excess of eight (8) hours."

¶ 10    On July 18, 2017, petitioner filed a motion to reconsider, in which he asked the trial court to state its analysis of factors set forth in section 602.7 of the Act, reconsider its decision as to the right of first refusal, reconsider its decision regarding parenting time, and reconsider child support in light of recent changes to the Act. The trial court denied petitioner's motion to reconsider. Petitioner now appeals.

¶ 11                                    ISSUES

¶ 12                          I. Allocation of Parenting Time

¶ 13    The first issue is whether the trial court erred in allocating parenting time by not including an analysis of the factors in section 602.7 of the Act. Petitioner contends the trial court failed to consider the statutory factors listed in section 602.7(b) (750 ILCS 5/602.7(b) (West 2016)) when allocating parenting time between the parties. Petitioner points to the fact that the trial court did not summarize the evidence, nor did it mention any factor of section 602.7(b), as evidence of such failure. We are unconvinced.

¶ 14    Section 602.7 of the Act requires a court to allocate parenting time in accordance with the best interest of the child. *Id.* § 602.7(a). In allocating parenting time, the court shall consider all relevant factors, including (1) each parent's wishes; (2) the child's wishes; (3) the amount of time that each parent spent performing caretaking functions with respect to the child in the 24 months preceding the filing of any petition for allocation of parental responsibilities; (4) any prior agreement or course of conduct between the parents relating to caretaking functions; (5) the interaction and interrelationship of the child with his parents and siblings and with any other

5

person who may significantly affect his best interests; (6) the child's adjustment to his home, school, and community; (7) the mental and physical health of all individuals involved; (8) the child's needs; (9) the distance between the parents' residences; (10) whether a restriction on parenting time is appropriate; (11) the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household; (12) each parent's willingness and ability to place the child's needs ahead of his or her own; (13) each parent's willingness and ability to facilitate and encourage a close and continuing relationship between the other parent and the child; (14) the occurrence of abuse against the child or other member of the child's household; (15) whether one parent is a sex offender or resides with a sex offender; (16) the terms of the parent's military family-care plan if a parent is a member of the United States Armed Forces who is being deployed; and (17) any other factor that the court expressly finds to be relevant. *Id.* § 602.7(b).

¶ 15    Because the trial court is in the best position to assess the credibility of witnesses and determine the child's best interests, its decision regarding the allocation of parenting time must be accorded great deference. *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 45. We will not overturn the trial court's decision unless the court abused its considerable discretion or its decision is against the manifest weight of the evidence. *Id.* Petitioner cites *In re Custody of G.L.*, 2017 IL App (1st) 163171, in support of his contention that the trial court failed to properly consider and weigh the factors in section 602.7(b).

¶ 16    In that case, the trial court failed to specifically mention the factors of section 602.7 but did summarize evidence. *Id.* ¶ 44. However, that court specifically stated as follows:

"Although a trial court must consider all relevant factors when determining the best interests of a child, it is not required to make an explicit finding or [specific]

6

reference to each factor. [Citations.] Generally, we presume that a trial court knows the law and follows it accordingly. [Citation.]" *Id.* ¶ 43.

A petitioner's mere assertion that the trial court did not consider the statutory factors is insufficient to overcome the presumption that the trial court knew and followed the law. *Id.* ¶ 44.

¶ 17    In the instant case, Brian Trambley, the guardian *ad litem*, specifically utilized the 17 factors of section 602.7(b) in addressing the best interest of the children and the allocation of parenting time. In his report to the court, Trambley went into great detail and analyzed each of the 17 factors. With regard to the first factor, he noted that each parent gave him a proposal for parenting time and they did not differ in great detail. After addressing all the factors, Trambley concluded that both parties love their children and have the children's best interests in mind. He noted that the children want to see both of their parents as much as they can but equal time is not a reality.

¶ 18    In its March 15, 2017, letter to the parties' attorneys, the trial court stated it considered all the evidence, including the guardian *ad litem*'s report. As a result, the record shows the trial court was aware of the 17 factors to be considered pursuant to section 602.7(b). Petitioner fails to point to anything in the record that shows the trial court did not consider the section 602.7 factors; he merely points to the lack of any explicit mention of the factors by the trial court and a summary of the evidence. But given the fact that the trial court specifically stated it considered "all evidence" including the guardian *ad litem*'s report, which analyzes all of the factors in depth, we presume the trial court properly considered all statutory factors.

¶ 19                                    II. Best Interest

¶ 20    The second issue we are asked to address is whether the trial court entered a parenting time order that is in the best interest of the children. Petitioner contends when the facts of this

7

case are analyzed in light of the factors of section 602.7(b) it is clearly apparent the trial court's order as to the parenting time schedule is not in the best interest of the children. We disagree.

¶ 21    A trial court's findings as to a child's best interest are entitled to great deference because the trial judge is in a better position than we are to observe the personalities and temperaments of the parties and assess the credibility of the witnesses. *In re Marriage of Stopher*, 328 Ill. App. 3d 1037, 1041 (2002). "It is a well-established rule that the credibility of witnesses should be left to the trier of fact because it alone is in the position to see the witnesses, observe their demeanor, and assess the relative credibility of witnesses where there is conflicting testimony on issues of fact." *In re Marriage of Kaplan*, 149 Ill. App. 3d 23, 28 (1986). We will overturn such a determination only if it is against the manifest weight of the evidence, is manifestly unjust, or is the result of an abuse of discretion. *In re B.B.*, 2011 IL App (4th) 110521, ¶ 32. A judgment is against the manifest weight of the evidence only if an opposite conclusion is apparent or if the findings appear unreasonable, arbitrary, or not based on the evidence. *In re Custody of K.P.L.*, 304 Ill. App. 3d 481, 488 (1999).

¶ 22    Contrary to petitioner's assertions, when the facts of this case are analyzed in light of the factors set forth in section 602.7(b) of the Act, it is not clearly apparent that the trial court's order as to the parenting time schedule is not in the best interest of the children. Here, the first factor, the wishes of each parent, does not favor either parent. Both parties sought equal parenting time, and the proposals they submitted were fairly similar. The only real difference boils down to who would have the children every other Sunday night during the school year.

¶ 23    The second factor, the wishes of the children, showed that the children did express a desire to see petitioner on Sunday evenings. However, the wishes of the children should not be

given too much emphasis due to the children's young ages. The oldest child was only eight at the time the guardian *ad litem* interviewed the children.

¶ 24    The third factor, the amount of time each spent with performing caretaking functions with respect to the children in the 24 months preceding the filing of the petition for allocation of parental responsibilities, is split. Both parties gave varying accounts as to which party performed the majority of caretaking functions. It is clear to us, however, that both parties participated in caretaking functions, and the record shows both are capable of carrying out such functions in the future.

¶ 25    The fourth factor, any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the children, is inapplicable because the parties failed to reach an agreement.

¶ 26    With regard to the fifth factor, the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests, it does not support one parent over the other. The children love each other and their parents.

¶ 27    As to the sixth factor, the child's adjustment to his or her home, school, and community, it appears that all the children are adjusting well. The children were originally home schooled by respondent's mother but are now attending public school and have adapted. The parties live relatively close to each other, and both have adequate space for the children. For the most part, it appears the children have adjusted as well as can be expected to the parties' separation and dissolution of marriage.

¶ 28    As to the seventh factor, the mental and physical health of all individuals, there are not any issues that are relevant to parenting time.

9

¶ 29    As to the eighth issue, the child's needs, the record does not reflect any special needs on the part of any of the children. It appears all children's needs are being met.

¶ 30    With regard to the ninth issue, the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement, it does not appear that this factor favors one party over the other. As previously discussed, the parties' residences are within relatively close proximity. Respondent retained the marital residence, and petitioner lives in an apartment approximately 20 miles away. The record shows some discord about sports schedules but nothing that would be overly worrisome.

¶ 31    With regard to the tenth factor, whether a restriction on parenting time is appropriate, the record fails to show any restriction is necessary.

¶ 32    With regard to the eleventh factor, the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household, we disagree with petitioner that this factor favors him. Petitioner points to an incident early in the parties' separation when respondent allegedly threw a picture frame against a wall and "grabbed" G.W. Given the fact that respondent just learned petitioner was seeing another woman, it is clear to us that it was a moment of passion. No further incident has been reported.

¶ 33    As to the twelfth factor, the willingness and ability of each parent to place the needs of the child ahead of his or her own needs, petitioner admits that this factor favors respondent due to her more flexible work schedule.

¶ 34    With regard to the thirteenth factor, the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, petitioner insists this factor favors him. Petitioner alleges respondent tried to limit his contact

with the children in the following four ways: (1) texting him on short notice of D.W.'s first soccer game, (2) not facilitating to his satisfaction his daily phone calls to the children, (3) refusing to give petitioner Sunday nights with the children, and (4) not changing the parenting schedule to accommodate his work schedule. The guardian *ad litem* was aware of most, if not all, of these concerns when he concluded "these parents can foster a continuing relationship between each other and the children." The trial court agreed with this conclusion. Based upon the record before us, we cannot say the opposite conclusion is clearly apparent. Both parties appear able to facilitate and encourage a close and continuing relationship between the other parent and child, especially after the initial shock of the dissolution wore off and the reality of their new situation set in.

¶ 35    The final four factors do not apply: (1) there is no evidence to support any physical violence or threat of physical violence by either parent, except for the minor incident previously discussed; (2) neither parent is a sex offender; (3) neither parent is a member of the armed forces; (4) there are no other factors relevant to the decision making process.

¶ 36    The biggest advantage probably goes to respondent due to her flexible work schedule. But the reality here is that the factors amount to basically a tie, with none of the factors greatly favoring one party over the other. The trial court's order reflects this balance by allowing both parties a substantial amount of parenting time. Under these circumstances, we cannot say the trial court entered a parenting time order that is not in the best interests of the children.

¶ 37                                    III. Right of First Refusal

¶ 38    The third issue raised on appeal is whether the trial court erred in entering a right of first refusal provision that takes effect only if either parent cannot exercise their parenting time for a period of eight hours. Petitioner contends it is not in the best interest of the children to have an 8-

hour requirement because respondent, who has a flexible work schedule, can adjust her work schedule to work for 7 hours and 55 minutes just to interfere with petitioner's ability to see the children while she is at work. Petitioner asks for a right of first refusal that would take effect when either parent cannot exercise his or her parenting time for a period of four hours or more.

¶ 39    Section 602.3(a) of the Act provides:

> "(a) If the court awards parenting time to both parents under Section 602.7 or 602.8, the court may consider, consistent with the best interests of the child as defined in Section 602.7, whether to award to one or both of the parties the right of first refusal to provide child care for the minor child or children during the other parent's normal parenting time, unless the need for child care is attributable to an emergency." 750 ILCS 5/602.3(a) (West 2016).

Section 602.3(b) of the Act provides " 'right of first refusal' means that if a party intends to leave the minor child or children with a substitute child-care provider for a significant period of time, that party must first offer the other party an opportunity to personally care for the minor child or children." *Id.* § 602.3(b).

¶ 40    A trial court's determination as to best interests of the child will only be reversed if it is clearly against the manifest weight of the evidence and it appears a manifest injustice has occurred. *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. A judgment is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *Id.* Here, we cannot say the trial court's decision to grant a right of first refusal provision of eight hours is against the manifest weight of the evidence.

¶ 41    An eight-hour right of first refusal as opposed to a four-hour right of first refusal appears reasonable under the facts and circumstances of this case. Petitioner's argument is based on

12

nothing more than conjecture and speculation. What is clear is that both parties work full-time outside the home. While there were some incidents early after the parties' separation that indicate some problems working in the children's best interest, both have since shown the ability to resolve issues more amicably. However, a four-hour right of first refusal could require the parties to contact each other more than necessary and potentially lead to greater conflict. After careful consideration, we cannot say the trial court's decision to grant an eight-hour, rather than a four-hour, right of first refusal when substitute care is required is against the manifest weight of the evidence.

¶ 42                                    IV. Motion to Reconsider

¶ 43    The final issue is whether the trial court erred in denying petitioner's motion to reconsider regarding child support. Petitioner asserts that there has been a substantial change in the law since the original hearings in this matter by virtue of an amendment to section 505 of the Act (750 ILCS 5/505 (West 2016)), which makes Illinois an "income shares" model state with regard to child support. Petitioner argues the trial court should have allowed his motion to reconsider and followed this new model. We disagree.

¶ 44    A motion to reconsider draws a trial court's attention to newly discovered evidence that was unavailable at the time of the first hearing, changes in the law, or errors in the previous application of existing law to the facts of the case. *In re Marriage of Lasota*, 2014 IL App (1st) 132009, ¶ 28. Whether a motion to reconsider should be granted is left to the sound discretion of the trial court and its decision will not be overturned absent an abuse of discretion. *Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1061 (2002).

¶ 45    Public Act 99-764 (eff. July 1, 2017) changed section 505 of the Act (750 ILCS 5/505) to make Illinois an "income shares" model. The trial court's initial ruling made via letter was

13

entered on March 15, 2017, and the judgment order for final disposition was entered on June 19, 2017. Thus, the trial court's rulings with regard to child support were made under the law applicable at the time. Because the trial court applied the law that was in effect at the time of its ruling, the trial court did not abuse its discretion in denying petitioner's motion to reconsider.

¶ 46                                    CONCLUSION

¶ 47    For the foregoing reasons, we affirm the final parenting plan and the judgment of dissolution entered in the circuit court of Johnson County.

¶ 48    Affirmed.

2018 IL App (5th) 170380

NO. 5-17-0380

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF WILLIAM DANIEL WHITEHEAD, | ) ) ) | Appeal from the Circuit Court of Johnson County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 15-D-21 |
| STEPHANIE NEWCOMB-WHITEHEAD, | ) ) ) | Honorable James R. Williamson, |
| Respondent-Appellee. | ) | Judge, presiding. |

---

**Opinion Filed:**     March 8, 2018

---

**Justices:**     Honorable Richard P. Goldenhersh, J.

Honorable Melissa A. Chapman, J., and
Honorable Judy L. Cates, J.,
Concur

---

**Attorney for Appellant**     Winter D. Campanella, Campanella Law Firm, P.C., 144 South Division Street, P.O. Box 317, Carterville, IL 62918

---

**Attorney for Appellee**     Gerald S. Reed, Reed, Heller, Mansfield & Gross, 1100 Walnut Street, P.O. Box 727, Murphysboro, IL 62966

---