**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190186-U

Order filed April 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* The Parentage of A.L.H., a Minor, | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit, |
| | ) | Knox County, Illinois |
| (Christopher H., | ) | |
| | ) | Appeal No. 3-19-0186 |
| Petitioner-Appellee, | ) | Circuit No. 13-F-125 |
| | ) | |
| v. | ) | Honorable |
| | ) | Anthony William Vaupel |
| Kimberly E., | ) | James G. Baber |
| | ) | James Standard |
| Respondent-Appellant). | ) | Judges, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:   Trial court did not err when it granted father's petition to modify parenting time and denied mother's cross-petition to modify the right of first refusal.

¶ 2        Petitioner Christopher H. and respondent Kimberly E. share a daughter, A.L.H. Both parents moved to modify their parenting agreement, which the trial court granted in part and denied in part. It awarded Christopher additional time with the child in the summer and denied Kimberly's

request to narrow the right of first refusal, to schedule A.L.H.'s return time an hour earlier and to reduce Christopher's extended summer vacation time. Kimberly appealed. We affirm.

¶ 3                                                          FACTS

¶ 4        Petitioner Christopher H. and respondent Kimberly E. had a daughter, A.L.H., born March 6, 2013. Christopher was declared to be A.L.H.'s natural father and the parties entered into an agreed order in November 2014 concerning custody, visitation and child support. The order awarded the parties joint custody of their daughter, designating Kimberly as the primary residential parent and granting her sole decision-making regarding school choice, religious upbringing, piercings, tattoos and haircuts. The agreed order awarded Christopher parenting time on Fridays from 5 p.m. until Sundays at 5 p.m. When Christopher was required to work on Fridays, Friday nights or Saturday mornings, his parenting time was postponed until he was finished with work on Saturday. Christopher was also awarded parenting time every Wednesday until 8 p.m. and various holidays per an arranged schedule. Both parents were granted up to three weeks' vacation time per year with the requirement that one week be used when the day-care provider was closed for vacation. The order further provided that if either parent was required to work for more than four hours during his or her parenting time, he or she must contact the other parent and allow him or her "to exercise the right of first refusal" to spend the time with A.L.H. The right of first refusal was also applicable to any holiday or vacation parenting time where the parent had to work.

¶ 5        Another agreed order entered in 2016 modified the initial agreement to allow the parents electronic visitation with A.L.H. and Christopher to bring his daughter to religious services but prevented him from indoctrinating her into the Catholic faith. The agreed order also modified the right of first refusal provision to state that if the parent was unavailable for more than four hours during their parenting time, "and the child will not be with extended family," the other parent has

2

the right of first refusal. Extended family was defined as grandparents, in-laws, spouses and siblings. The modified provision was expressly applicable to weeks of uninterrupted vacation days but did not apply when the parent and child were out-of-town on vacation. The amended order further provided that if A.L.H. was to be with extended family for more than four hours, the other parent must be notified and provided contact information for the extended family member. The order also limited time with extended family to no more than one overnight visit.

¶ 6        Christopher filed a petition to modify in November 2017, alleging a change in circumstances that A.L.H. was in preschool and would be attending public school the following fall. He sought to apportion parenting time for the school holidays and summers. Christopher also claimed Kimberly failed to discuss significant decisions affecting the child, specifically as to A.L.H.'s education. Christopher sought additional time with his daughter during breaks from day care and school and an equal split of time between the parents during A.L.H.'s summer break. In response, Kimberly sought to modify the right of first refusal to eliminate the exception for extended family, implement a 7 p.m. return time during the school year and two weeks prior to school's commencement in the fall, and decrease Christopher's summer parenting time from three weeks to one week.

¶ 7        The parties participated in mediation, following which an agreed order was entered in April 2018. The order addressed school attendance and location and equally divided parenting time during school breaks. Christopher petitioned to enforce the agreed order or to modify or vacate it the same month the order was entered. Kimberly moved to vacate the order, asserting it did not reflect the agreement the parties had reached in mediation. The April 2018 order was vacated in May 2018. The order kept the prior orders in effect and allowed Christopher uninterrupted

parenting time from May 31, 2018 to June 9, 2018. The order set a trial date for Christopher's petition to modify.

¶ 8       In anticipation of trial, Christopher filed a parenting plan in which he sought parenting time with A.L.H. every Tuesday after school until 8 p.m., every other Thursday for an overnight and every other weekend from Friday after work until Sunday at 8:30 p.m. He sought an equal division of winter and spring breaks and alternate weeks during summer vacation. He suggested that when A.L.H. had either a Monday or Friday off school, that day attach to whichever parent had the corresponding weekend. He also suggested a right of first refusal excepting grandparents, in laws, spouses and siblings and proposed a new holiday schedule.

¶ 9       Kimberly filed a response to Christopher's November 2017 petition to modify and a counterpetition to modify. She alleged substantial changes in circumstances since the July 2016 agreed order was entered. First, she asserted that Christopher was often not present during his parenting time and left A.L.H. with third parties and sought a "more defined" right of first refusal and a required disclosure of work schedules. Second, she claimed that since A.L.H. was in school, a 7 p.m. return time should be instituted during the school year and for the two weeks before school started in the fall. She also sought to eliminate any overnight parenting time with Christopher during the school year "to effectuate an optimal sleep schedule for the minor to benefit [A.L.H.'s] school performance." Third, Kimberly maintained that neither parent used their full three weeks of summer vacation time and suggested that the parties be allowed one week of vacation in June or July to allow A.L.H. "to revert to a school routine and schedule for the benefit of the child's school performance." Kimberly filed a parenting plan suggesting Christopher have parenting time every other weekend, alternate holidays as defined and one week of extended parenting time in the summer. Her plan included a right of first refusal where if either parent "is not available to

4

personally be present for parenting time" for more than two hours, the other parent must be offered the right of first refusal.

¶ 10    A trial took place in November 2018 on the parties' petitions to modify. The issues were limited to whether the right of first refusal should be modified and whether Christopher's summer parenting time should be increased.

¶ 11    Christopher testified that he was 29 years old, lived in Galesburg with his wife and one-year-old daughter and worked as a financial advisor with an office in Knoxville. His work hours were Monday through Friday from 8 a.m. to 4:30 p.m., with an occasional Wednesday evening appointment, although he had no set hours that he needed to be at the office. His wife also worked, with varying hours generally starting between 9 or 10 a.m. and ending at 3:30 or 4:30 p.m., Monday through Friday. His parents, in-laws, younger sister and one-year-old niece also lived in Galesburg. When he had parenting time, A.L.H. was always with him and he did not leave her with his wife or parents. The only times A.L.H. spent more than four hours with his parents was for his wedding and on one occasion when they took A.L.H. to an apple orchard. He claimed that Kimberly would cause an argument if she discovered that he had taken their daughter to spend time with her grandparents and that it was easier to avoid conflicts with her than to allow his parents to see A.L.H. He had no issues with A.L.H. spending time with Kimberly's father.

¶ 12    According to Christopher, Kimberly insisted that if he had A.L.H. for a week vacation time, he had to take off work to spend his time with his daughter, and if he could not take off work, he should forfeit his parenting time. He had never worked during his vacation time and left A.L.H. with third parties. The prior summer, he took A.L.H. on a one-week vacation and when he returned, Kimberly immediately exercised her week vacation, resulting in him not seeing A.L.H. for 12 days. He disagreed that in return he had three full weekends with A.L.H. Christopher

acknowledged that he did not use his full three weeks of vacation time with A.L.H. but stated that he did not do so because Kimberly insisted he took time off work, there were "repercussion[s]" from Kimberly when he did exercise vacation time, and he was reluctant to use the time because of Kimberly's response and the difficulty in working with her. Christopher believed that a week-to-week split of parenting time would allow A.L.H. to spend time with him and his extended family, making things easier and eliminating arguments about what he did with A.L.H. when she was in his care. He also testified that it would be beneficial for A.L.H. to see him in his daily routine, such as getting up, preparing and leaving for work rather than her only spending time with him as the "fun dad." His other daughter, A.L.H.'s half-sister, was cared for during the week by her maternal grandmother, who agreed to watch A.L.H. as well. In addition, his mother and sister were available to provide day care during the week. He characterized the right of first refusal as problematic but stated that it was important for A.L.H. to spend time with both parents and their extended families. As it was currently practiced, the right of first refusal prevented him from leaving A.L.H. with her stepmother in order to keep Kimberly from being upset.

¶ 13    Kimberly testified that she lived in Alexis and worked as a therapist and social worker at a hospice. She was in charge of her own schedule but generally worked late in the day on Tuesdays and every other Thursday or Friday so she could be available other days to be with A.L.H. She also worked part-time at Western Illinois University on Tuesdays before 5 p.m., generally with a class from 2 to 4:30 p.m. She took extensive time off in the summer to spend with A.L.H. She used her extended vacation time for short trips to Chicago or Iowa. She felt Christopher should take time off during the summer to exercise his vacation parenting time because that was the only way he could be with A.L.H. In her opinion, if Christopher wanted parenting time, he should see A.L.H. during that time. If Christopher had to work during his vacation time, A.L.H. should be with her.

Kimberly said she used day care for A.L.H. for two or three hours a few days per week, depending on her schedule. Kimberly stated the right of first refusal was beneficial. She believed the current summer schedule was in A.L.H.'s best interest. She did not think that alternating weeks between her and Christopher was a viable parenting plan.

¶ 14 The trial court decided not to change the right of first refusal and clarified that the right of first refusal was not triggered when A.L.H. was with a parent's extended family. The court found that when A.L.H. was with Christopher, he had the right to decide that it was in his daughter's best interest to spend time with A.L.H.'s half-sister and stepmother and his extended family. The trial court rejected Christopher's request to alternate parenting time in the summer and drafted an alternate schedule for A.L.H.'s winter holiday break. The court awarded both Christopher and Kimberly four weeks each for the summer of 2020 and five weeks to both parents every summer beginning in 2021, with the weeks to be nonconsecutive unless the parties agreed to an alternate week schedule. The court determined that neither party could exercise their week of parenting time to include the other parent's weekend.

¶ 15 In December 2018, the parties appeared for entry of the court's order and Christopher asked for clarification. In response, the court rejected Christopher's request to extend parenting time to the parent with the corresponding weekend when A.L.H. was off school on a Monday or Friday; divided winter break according to the previous holiday schedule and defined winter break as ending when school resumes, not earlier as Kimberly requested. The court entered an order providing (1) that it found a substantial change of circumstances and modified the parenting time but not the allocation of parental responsibilities as determined in the November 2014 agreed order; (2) that Christopher was not required to be present with A.L.H. during his parenting time but that she could be with his wife and extended family; denied Kimberly's request to modify

7

Christopher's parenting time during the week; declined to reduce Christopher's extended parenting time during the summer and also declined to award him half of summer break; (3) ordered that the extended parenting time with each parent must be taken during A.L.H.'s school breaks, may not be taken consecutively, and must include the weekend the parent taking the extended time would generally have; (4) awarded each parent four weeks of summer parenting time in 2020 and five weeks in 2021, and stated the weeks could be consecutive if the parties agreed; and (5) equally divided A.L.H.'s winter breaks. In addition, the court stated that unless expressly modified as stated, the November 2014 agreed order remained in effect.

¶ 16     Kimberly moved to reconsider, arguing the trial court's ruling allowed A.L.H. to be placed with third parties during Christopher's parenting time. At a hearing on Kimberly's motion, she argued that excepting Christopher's wife and extended family from the right of first refusal requirements violated the Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq.* (West 2018)), public policy and the United States Constitution. She further argued that Christopher should not be awarded additional time he had not exercised in the past.

¶ 17     The trial court denied the motion as to summer parenting time and clarified that it did not grant Christopher's extended family independent visitation, explaining that time with extended family was exercised only through the parent's parenting time. It denied Kimberly's request to modify the right of first refusal and Christopher's request for sanctions against Kimberly. The court entered an amended order on March 27, 2019. Kimberly appealed.

¶ 18                                    ANALYSIS

¶ 19     Kimberly raises two issues on appeal. She challenges the trial court's refusal to narrow the right of first refusal in the parties' parenting agreement and its decision to increase Christopher's summer parenting time.

8

¶ 20 We start with whether the trial court erred when it denied Kimberly's request to modify the right of first refusal. She contends that the court's ruling improperly allowed Christopher to place A.L.H. in the custody of third parties during Christopher's parenting time and A.L.H should be in her care. According to Kimberly, the trial court's decision violates the superior rights doctrine and grants independent parenting time to third parties.

¶ 21 A court may award a parent the right of first refusal to provide childcare for the child during the other parent's parenting time when consistent with the best interests of the child. 750 ILCS 5/602.3(a) (West 2018). Under the right of first refusal, when a parent leaves the child with a substitute child-care provider for a "significant period of time," the other parent must be offered the opportunity to have the child in their care. 750 ILCS 5/602.3(b) (West 2018). The court may determine if a right of first refusal is in the child's best interest considering the child's best interests and "(1) the length and kind of child-care requirements invoking the right of first refusal; (2) notification to the other parent and for his or her response; (3) transportation requirements; and (4) any other action necessary to protect and promote the best interest of the minor child or children." 750 ILCS 5/602.3(b)(1)-(4) (West 2018). Where the parents are unable to avoid conflict between each other, a right of first refusal should be crafted that limits their need to communicate. *In re Marriage of Whitehead & Newcomb-Whitehead*, 2018 IL App (5th) 170380, ¶ 41. The superior rights doctrine provides that parents have a fundamental liberty interest in raising their children. *Lulay v. Lulay*, 193 Ill. 2d 455, 470 (2000) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Included in the fundamental rights is the parents' right to decide with whom their child should associate. *Id.* at 473-74. This court will not reverse the trial court's determinations regarding the child's best interest unless they are against the manifest weight of the evidence. *Marriage of Whitehead & Newcomb-Whitehead*, 2018 IL App (5th) 170380, ¶ 40.

9

¶ 22    The parties agreed to a right of first refusal in the initial agreed order entered in November 2014. The order provided that if either parent was required to work for more than four hours during his or her parenting time, the other parent was accorded the right of first refusal to have the child in their care. The right of first refusal was modified in July 2016, again by agreed order, to provide that if the parent with physical custody of the child was required to work for more than four hours and the child was not with extended family, the other parent was entitled to the right of first refusal. Finally, in December 2018, the court entered an order stating that the right of first refusal provision from 2016 remained in effect but expressly provided that Christopher "may, during his parenting time, not be present with the child, but allow the parties' child to spend time with other family members."

¶ 23    Contrary to Kimberly's assertions, the superior rights doctrine is not implicated here. None of Christopher's family members petitioned for visitation and the court did not provide any extended family member an independent right of visitation. The superior rights doctrine does, however, come into play as noted by the trial court, in that Christopher is entitled to determine whether he believes it is in A.L.H.'s best interest that she spend time with her half-sister, stepmother, grandparents, aunt and cousin. According to Christopher's testimony, his conduct in allowing his daughter to spend time with his extended family, even if he was also present, created conflict with Kimberly and caused him to cede parenting time to avoid the hassles. The trial court's allowance for Christopher to not be physically present with A.L.H. during each minute of his parenting time and agreeing that A.L.H. may be with other family members will serve to diminish the conflict between Christopher and Kimberly as to the daily physical custody of A.L.H.

¶ 24    Kimberly presented no evidence and did not claim that A.L.H. suffered any emotional or physical harm by visiting with Christopher's extended family. The statutory best interest factors

include "the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests." 750 ILCS 5/602.7(b)(5) (West 2018). Christopher testified that his extended family loved A.L.H. and that she had a half-sibling and cousin of similar age. Kimberly's sole concern appeared to be that Christopher would have time with A.L.H. to share with his family and that would take time away from her parenting time. However, Kimberly shared her parenting time with her father and day-care provider, both of whom cared for A.L.H. when Kimberly was not available during her parenting time. The trial court did not err in refusing Kimberly's request to modify the right of first refusal to prevent Christopher from sharing A.L.H. with his extended family during his parenting time.

¶ 25    The next issue is whether the trial court erred when it increased Christopher's parenting time. Kimberly argues that the trial court should not have increased Christopher's summer parenting time. She maintains that an increase in parenting time was not justified when Christopher failed to use all the summer vacation parenting time previously awarded to him. She further argues that the trial court's decision aligns with its presumed error in refusing to modify the right of first refusal in that an increase in Christopher's parenting time allows him to leave A.L.H. with third parties.

¶ 26    A parenting plan may be modified by the court when

> "necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan *** a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." 750 ILCS 5/610.5(c) (West 2018).

11

The court's decision to modify parenting time will not be reversed unless it was against the manifest weight of the evidence. *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004).

¶ 27       When allocating parenting time, the court must consider the following factors to decide if modification is in the child's best interests: the parents' wishes; the child's wishes, considering her maturity and ability to express a reasoned and independent preference; the time each parent spent on caretaking duties in the prior two years; the parents' prior agreement or course of conduct regarding caretaking duties; the child's interaction and interrelationship with her parents, siblings and any other person who may significantly affect the child's best interests; the child's adjustment to her home, school and community; the mental and physical health of the persons involved; the needs of the child; the distance between the parents' homes, the parents' and child's schedules, the difficulty and cost of transporting the child between them and the parents' ability to cooperate in the transportation; whether it is appropriate to restrict parenting time; each parent's willingness and ability to place the child's needs ahead of their own; each parent's ability to facilitate and encourage a close and continuing relationship between the other parent and the child; and any other factor the court finds relevant. 750 ILCS 5/602.7 (West 2018).

¶ 28       The best interest factors support the trial court's allocation of parenting time. Both parents wanted substantial parenting time with their daughter. There was no evidence regarding A.L.H.'s wishes or that she did not wish to spend time with either parent. Both parents are invested in A.L.H. and each has performed the entirety of caretaking functions during their parenting time. The parents have followed a similar parenting plan throughout A.L.H.'s life, with Kimberly being the primary residential parent and Christopher consistently exercising his parenting time. There was no evidence presented that A.L.H. had any problems adjusting to either home. There was no evidence A.L.H., either parent or extended family members had any mental or physical health

issues that would be detrimental to A.L.H. Both parents were willing and able to meet A.L.H.'s needs. The parents lived in the general area of the Quad Cities and seemingly were able to transport A.L.H. without difficulty between each other's houses, her school and any social activities in which she was involved. There was no need to restrict either parent's parenting time. Each parent placed A.L.H.'s needs above their own, although Kimberly did so less than Christopher by attempting to micromanage his parenting time. Kimberly also seemed less willing to facilitate and encourage A.L.H.'s relationship with Christopher as established by his testimony that it was ultimately less conflict for A.L.H. when he conceded to Kimberly's demands. Kimberly's proposed parenting plan substantially decreased Christopher's time with A.L.H. to every other weekend, alternating holidays and one uninterrupted week in the summer.

¶ 29       Kimberly again raises the superior rights doctrine, which is inapplicable as the court expressly provided that it was not providing any independent right of visitation to any of Christopher's extended family. The court properly considered that it was up to Christopher to determine what relationships were in A.L.H.'s best interest. The court gradually increased Christopher's summer parenting time over a two-year period, ultimately resulting in each parent having equal amounts of summer vacation time with A.L.H. We find its determination was in A.L.H.'s best interest and was not in error.

¶ 30                                         CONCLUSION

¶ 31       For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

¶ 32       Affirmed.

13