NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230971-U

NO. 4-23-0971

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 27, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PAIGE R., | ) | Appeal from the |
| Petitioner-Appellant, | ) | Circuit Court of |
| | ) | Mercer County |
| v. | ) | No. 22DC28 |
| | ) | |
| BLAKE R., | ) | Honorable |
| Respondent-Appellee. | ) | Matthew W. Durbin, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the trial court's order allocating parenting time and decision-making responsibilities because that order was not against the manifest weight of the evidence.

¶ 2    Petitioner, Paige R., and respondent, Blake R., were married in 2016 and had two children during the marriage, J.R. (born January 2017) and W.R. (born February 2019). In April 2022, Paige filed a petition for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2022)).

¶ 3    In June 2023, the trial court entered an order (1) dividing the marital estate as stipulated to by the parties and (2) allocating decision-making responsibilities and parenting time between the parties generally as set forth in Blake's proposed parenting plan.

¶ 4    Paige appeals, arguing the trial court erred by (1) granting sole decision-making responsibilities regarding education to Blake, (2) failing to adopt portions of the parties' joint

stipulations regarding the children, and (3) granting the parties equal parenting time. We disagree and affirm.

¶ 5                                    I. BACKGROUND

¶ 6                                  A. Procedural History

¶ 7          In April 2022, Paige filed a petition for dissolution of marriage under the Act in Rock Island County. The petition alleged that Paige and Blake were married in 2016 and had two children during the marriage, J.R. and W.R. Paige also filed a proposed parenting plan pursuant to section 602.10 of the Act (750 ILCS 5/602.10 (West 2022)), seeking, among other things, majority parenting time and sole significant decision-making responsibilities.

¶ 8          In August 2022, Blake requested a change of venue to Mercer County, alleging Paige and the children had moved to Bettendorf, Iowa. Paige agreed to the transfer.

¶ 9          In October 2022, Blake filed two pleadings relevant to this appeal: (1) a "Petition to Return the Children to the State of Illinois," alleging that, in January 2022, Paige removed the children to Iowa without Blake's permission and (2) a response to the petition for dissolution of marriage, which included a proposed parenting plan that sought, among other things, majority parenting time and joint significant decision-making responsibilities.

¶ 10          In December 2022, the trial court ordered the children to be returned to Illinois.

¶ 11          In June 2023, Blake filed a second proposed parenting plan, requesting (1) joint decision-making responsibilities and (2) that the parties share equal parenting time with a week-on-week-off-schedule.

¶ 12                                B. The Evidentiary Hearing

¶ 13          Later in June 2023, the trial court conducted a hearing on the petition for dissolution of marriage.

¶ 14        At the beginning of the hearing, the parties offered a joint stipulation regarding parenting and other marital matters. The parties stipulated that they had agreed, among other things, to (1) "share decision making in all four domains[,] to wit: religious upbringing, education, medical and extra[ ]curricular activities;" (2) discuss and agree upon all extracurricular activities; (3) allow each parent full access to the children's medical care information; (4) divide holidays as per a schedule attached to the joint stipulation; (5) allow each parent to attend appointments, events, and activities; (6) allow for pick up and drop off by each parent and family members; (7) split health care, school, and extracurricular expenses; and (8) a right of first refusal for parenting time. Absent from the joint stipulations was any agreement regarding nonholiday-related parenting time.

¶ 15        The trial court then heard testimony from (1) Paige, (2) Mitchell Snyder, Paige's "paramour," (3) Dianna D., the maternal grandmother, (4) Lisa Lynn Wessels, a former neighbor of Blake and Paige during their marriage, (5) Blake, and (6) Michelle R., the paternal grandmother. No exhibits were offered.

¶ 16        Following the hearing, the trial court entered a written order in which it (1) allocated to Blake primary decision-making authority regarding education, (2) ordered 50/50 parenting time, and (3) set forth a summary of the evidence it received.

¶ 17        The testimony showed that Paige and Blake started living together in May 2012 and were married in October 2016. They had two children during the marriage, one in 2017 and another in 2019. In December 2021, Paige moved out of the marital home, located in Keithsburg, Illinois, to live with her father in East Moline, Illinois, and took the children with her. Around that time, Paige began dating Mitchell.

¶ 18        In January 2022, Blake was injured in a car accident, resulting in his being

comatose for about a month. Blake returned home from the hospital in May 2022.

¶ 19 In April 2022, Paige moved with Mitchell to Bettendorf, Iowa. In January 2023, Paige moved to Moline with J.R., W.R., Mitchell, and the infant child of Paige and Mitchell. Paige's residence in Moline was 49 miles away from the marital home in Keithsburg.

¶ 20 C. The Trial Court's Order

¶ 21 In its order, the trial court first addressed the issue of decision-making authority, noting that it considered the statutory best interests factors listed in section 602.5 of the Act (750 ILCS 5/602.5(c) (West 2022)) when determining allocation of parental responsibilities.

¶ 22 Regarding education the trial court wrote as follows:

"The Court heard testimony that [Paige] has been caring for the children after voluntarily vacating the family residence with the children and moving roughly forty-five (45) minutes from the marital home. She has been responsible for educational decision-making ***. *** [Blake] has had little opportunity to make any decision-making as to education due to the removal of the children from the family household while he was in a coma. Testimony from [Blake] enlightened the Court as to his desires for his children to attend certain schools and not others. [Paige] has not included [Blake] in determining school districts, pre-school or other matters. [Paige] has acted without considering the wishes and desires of [Blake] for education."

¶ 23 Regarding healthcare, the trial court found that the children seemed to be "chronically ill in one form or another while in [Paige's] care. More testimony from [Blake and his mother] indicates that the children may or may not be getting adequate and immediate care while in the care of [Paige]." The court further wrote that Blake and Paige's mother credibly

testified that Blake had not been able to contribute to substantial decision-making while the children had been in Paige's care and Paige did not provide Blake with adequate notification. Also, W.R. was having behavioral difficulties and had been receiving follow-up care for potential lead poisoning. The source of the lead had yet to be determined by the parties.

¶ 24 Regarding religion, the trial court found that Blake had made "diligent efforts to accompany the children to religious events *** at the request of the children. [Paige] does not afford the children with any religious opportunities."

¶ 25 Regarding extracurricular activities, the trial court found that both parents had made an effort to attend J.R.'s T-ball games. However, J.R. had not been attending dance classes when in Paige's care, despite evidence that the child enjoyed dancing.

¶ 26 Regarding the best interests of the children, the trial court found that the children were having difficulty adjusting to their environment because they had been "shuffled from one household, school, and childcare provider to another" because of Paige's removal of the children from the marital home. One of the children had behavioral problems stemming from his removal from the marital home. The parents had not been able to cooperate, and Blake was not included in decisions regarding the best interests of the children. Blake credibly testified (in the trial court's opinion) that he had not been adequately advised "as to the placement of the children in school, daycare, or other programs. [He] has not been able to voice any opinion or give advice on these matters despite having very strong opinions on the matters."

¶ 27 Regarding prior decision-making, the trial court wrote as follows:

"Evidence received by the Court finds that some of the decisions of [Paige] as well as the ability to adequately parent are in doubt. Testimony heard by all witnesses indicate[s] that [Blake] is an attentive, loving and considerate parent. Maternal

grandmother of the children confirmed that [Blake] is a good and caring parent. Maternal grandmother, Dianna [D.], hedged her testimony and could not answer pointed questions on cross-examination about the parenting ability of her daughter while under oath. All unbiased, biased, and otherwise credible evidence heard by the Court leads the Court to believe that [Blake] is a diligent, loving, caring provider wishing to share custody and some decision-making with [Paige]."

¶ 28    The trial court noted that Paige wanted primary custody of the children but, in the court's view, "There was no evidence heard to award such to [Paige]." Blake wanted equal or joint custody and decision-making regarding education, and the court found that "[t]he preponderance of the evidence favor[ed Blake] in this regard."

¶ 29    The trial court concluded its order, writing that it had considered all applicable factors consistent with the evidence and testimony. In addition, the court had "reviewed 750 ILCS 5/602.7 (b)–750 ILCS 5/606.10." Ultimately, the court found that "[b]oth parents seem to have the best interest of the children in mind, but the manifest weight of the evidence favors [Blake] over [Paige]."

¶ 30    Paige filed a motion to reconsider, which the trial court denied in September 2023.

¶ 31    This appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33    Paige appeals, arguing the trial court erred by (1) granting sole decision-making responsibilities regarding education to Blake, (2) failing to adopt portions of the parties' joint stipulations regarding the children, and (3) granting the parties equal parenting time. We disagree and affirm.

¶ 34                            A. The Parties' Stipulations

¶ 35 As an initial matter, Paige argues that the trial court erred by rejecting the agreed upon provisions of the joint stipulations without explaining why. She cites section 602.10(d) of the Act (750 ILCS 5/602.10(d) (West 2022)) in support of that claim. We disagree.

¶ 36                                1. *The Applicable Law*

¶ 37 Section 602.10(d) of the Act provides, in relevant part, as follows:

"[T]he parents may agree upon and submit a parenting plan at any time after the commencement of a proceeding until prior to the entry of a judgment of dissolution of marriage. The agreement is binding upon the court unless it finds, after considering the circumstances of the parties and any other relevant evidence produced by the parties, that the agreement is not in the best interests of the child. If the court does not approve the parenting plan, the court shall make express findings of the reason or reasons for its refusal to approve the plan. The court, on its own motion, may conduct an evidentiary hearing to determine whether the parenting plan is in the child's best interests." 750 ILCS 5/602.10(d) (West 2022).

¶ 38                                    2. *This Case*

¶ 39 Paige's argument regarding this issue is premised entirely on section 602.10(d)'s requirement that a trial court make express findings when refusing to approve an agreed parenting plan. However, this section does not apply to the present case because, as the court wrote in its order, "[t]he parents have not mutually agreed to a parenting plan." Instead, the parties each submitted their own conflicting proposed plans and later filed the joint stipulations, which happened to include an agreement for joint decision-making authority and a holiday schedule. For the joint stipulations to be binding on the court pursuant to section 602.10(d) of the Act, the joint stipulations would need to constitute a parenting plan, which they do not.

¶ 40    Section 602.10(f)(2) requires that a parenting plan must contain "provisions for the child's living arrangements and for each parent's parenting time, including either: (A) a schedule that designates in which parent's home the minor child will reside on given days; or (B) a formula or method for determining such a schedule in sufficient detail to be enforced in a subsequent proceeding." *Id.* § 602.10(f)(2). Because the joint stipulations do not set forth a proposed plan for parenting time or the children's living arrangements, they are not an agreed parenting plan under the Act to which the trial court must defer. Accordingly, the stipulations were simply evidence for the court to consider in exercising its discretion to determine what arrangements were in the best interests of the children. See *In re Marriage of Iqbal*, 2014 IL App (2d) 131306, ¶ 36, 11 N.E.3d 1 ("Parents are not at liberty to make agreements which affect the interests of their children without obtaining the approval of the court." (Internal quotation marks omitted.))

¶ 41    B. Decision-Making Authority Regarding Education and Parenting Time

¶ 42    Paige's primary argument is that the trial court erred by granting (1) Blake significant decision-making authority regarding the children's education and (2) 50/50 parenting time because those decisions were against the manifest weight of the evidence. We disagree.

¶ 43    Regarding decision-making authority, Paige argues that the trial court erred because (1) it should have issued findings specifically as to why it was not accepting the stipulations in the joint stipulations and (2) joint significant decision-making authority was in the best interests of the children. Regarding parenting time, Paige argues that the court erred by failing to properly consider the best interests factors pursuant to section 602.7 of the Act (750 ILCS 5/602.7 (West 2022)) because (1) the court did not cite section 602.7 of the Act in its order and (2) the record strongly weighs in favor of granting her the majority of parenting time.

¶ 44    We first note that we have already rejected Paige's argument that the trial court was

required to accept the stipulations (*supra* ¶¶ 39-40). Second, Paige's remaining arguments are essentially that (1) the court should have weighed the evidence differently and (2) we should reweigh the applicable factors without deference to the trial court's findings. However, "[i]t is well settled that a reviewing court's function is not to reweigh the evidence or assess witness credibility and set aside the [trial] court's decision simply because a different conclusion may have been drawn from the evidence." *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 51, 165 N.E.3d 501. Accordingly, we give the court's findings deference.

¶ 45    Although the trial court must consider all relevant factors when determining the best interests of the children, the court is not required to make an explicit finding relating to each factor. *In re Marriage of Whitehead*, 2018 IL App (5th) 170380, ¶ 16, 97 N.E.3d 566. We presume that the court knows the law and properly applied it. *Id.* Mere assertions that the court did not consider all of the factors are insufficient to overcome that presumption. *Id.*

¶ 46    In addition, Paige's argument that the trial court did not mention section 602.7 of the Act in its order is simply wrong. In the "Conclusion and Order" section of the court's order, the court wrote as follows: "The Court has reviewed 750 ILCS 5/602.7 (b)–750 ILCS 5/606.10."

¶ 47    Further, nothing in the record convinces us that the trial court's decisions were against the manifest weight of the evidence. See *Jameson*, 2020 IL App (3d) 200048, ¶ 47 ("A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on evidence." (Internal quotation marks omitted.)).

¶ 48    In its order, the trial court set forth both its credibility findings and the evidence it found compelling. For example, based on the testimony, the court found that Blake had not had much input into the education of the children and that the parties have been unable to cooperate in

the best interests of the children regarding the children's education. The court also found that Paige's ability to adequately parent was in doubt, but "[a]ll unbiased, biased, and otherwise credible evidence heard" showed that Blake was a "diligent, loving, caring provide wishing to share custody and some decision-making with [Paige]."

¶ 49   In her brief, Paige simply applies all the statutory factors to the evidence in the record and concludes that her assessment of the weight to be given to the evidence shows that the trial court's assessment was erroneous. However, we reiterate that the weight to be given to evidence is to be left to the trial court's sound discretion. *Young v. Herman*, 2018 IL App (4th) 170001, ¶ 64, 92 N.E.3d 1070. Nothing in the record comes close to showing that (1) the court's evaluation of the evidence was not correct or (2) its ultimate conclusion was an abuse of discretion.

¶ 50   Last, we note that "[a]ny time a trial court serves as a fact finder, perhaps the single most important thing the court can do is say whom it believes and whom it does not. When the trial court favors us with such a finding, we are at the height of our deference to that court." *People v. Carter*, 2021 IL App (4th) 180581, ¶ 68, 188 N.E.3d 391. With that principle in mind, we thank the trial court for providing a detailed written order that contained explicit credibility determinations, which this court found particularly helpful in the resolution of this appeal.

¶ 51                    III. CONCLUSION

¶ 52   For the reasons stated, we affirm the trial court's judgment.

¶ 53   Affirmed.