NOTICE

Decision filed 08/25/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241098-U

NO. 5-24-1098

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* ESTATE OF JOHN C. ROBINSON II, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Karen Robinson, Executrix of the Estate of John C. Robinson II, | ) | Williamson County. |
| | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-PR-115 |
| | ) | |
| Angela Robinson, | ) | Honorable |
| | ) | Carey C. Gill, |
| Respondent-Appellee). | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's order classifying John Robinson II's accounts as residuary and passing said accounts to his children via intestacy is affirmed.

¶ 2   Executrix, Karen Robinson, appeals the trial court's order finding that John Robinson II's bank accounts were part of the residuary in his will and would be transferred pursuant to statutory intestacy provisions. She further appeals the trial court's denial of her request for reconsideration. For the following reasons, we affirm the trial court's order.

¶ 3                                 BACKGROUND

¶ 4   John C. Robinson II died on October 6, 2022. At the time of his death, he was married to Karen (Walrack) Robinson. On December 19, 2022, Karen filed a petition for probate of will and

1

for letters testamentary with a copy of John II's December 6, 1991, last will and testament. The approximate value of John II's estate was listed as "unknown" and the listed heirs included Karen, John C. Robinson III (decedent's son), Angela Robinson (decedent's daughter), and Michael Walrack (decedent's stepson and Karen's son). Letters of office were issued on February 6, 2023, naming Karen as the executrix. The court also entered an order admitting John II's will to probate and ordered the executrix to file an inventory within 60 days.

¶ 5    On April 6, 2023, the executrix filed "her inventory of the real estate and personal property of the decedent." The inventory included: (1) an account at Legence Bank; (2) an account at First Southern Bank; (3) an account at SIU Credit Union; (4) household furniture, furnishings, and personal possessions; and (5) real property located at 1605 West Copeland, Marion, Illinois. The approximate value of the estate was listed at $175,000.

¶ 6    On July 31, 2023, Angela filed a petition to adjudicate the rights of the parties. Therein, she alleged that John II and Karen entered into a prenuptial agreement on December 26, 2006. She argued that the property set forth in Exhibit A of the prenuptial agreement was "nonmarital property," which included the real property on West Copeland, vehicles, multiple checking and savings accounts, cash, and decedent's 401k and IRA accounts. The pleading alleged that Karen was precluded from taking under John II's will pursuant to the prenuptial agreement language and was not entitled to any of the estate's listed assets. Copies of John II's will and the prenuptial agreement were attached to the petition.

¶ 7    John II was unmarried at the time he executed his will. His will appointed Karen as the executrix and defined his residuary estate as whatever was left after payment of debts and taxes. However, no statement of how the residuary was to be disbursed was provided in the will. Instead, it provided specific bequests as follows: Karen was to receive John II's life insurance from

2

Diamond Star Motors, his 401k from Diamond Star Motors, all money in the checking accounts at Champion Federal in Bloomington, Illinois, Marine Bank in Bloomington, Illinois, and First Federal in Herrin, Illinois, all money in the savings accounts at those same banks, his IRA account, all other stocks or mutual funds, and all of his motor vehicles for which he held title, except for a 1991 Plymouth Laser which he said was the property of Karen's son, Michael. The will also set up college funds for John III and Angela while they were minors, and mutual funds were allocated that would provide payments based on grades. The funds would revert to Karen if the children did not attend college. Other specific bequests provided John II's hand and power tools to Michael, Oneida flatware to Angela, and three rings, coins, gold, race cards, and racing memorabilia to John III.

¶ 8    The 2006 prenuptial agreement listed the items in Exhibit A as John II's real and personal property and the items in Exhibit B as Karen's real and personal property. Exhibit A listed John II's total net worth as $649,441.38 based on his assets that included his 401k and IRA, a mutual fund, cash, checking and savings accounts at Credit Union 1 and MidCountry Bank, the real property on Copeland, a duplex in Herrin, three cars, and a motorhome. Karen listed her total assets as $22,824.83; however, the list of assets—which included an IRA, a checking and savings account, a home on Remington Court in Marion, Illinois, a vehicle, and jewelry—actually equated to $228,249.14.

¶ 9    Pursuant to the prenuptial agreement, both parties waived any right, title, or interest in the separate property of the other and waived, released, and relinquished all right, title, interest or claim in the other's property. The property listed in Exhibits A and B was to pass in accordance with their wills. Each party also

3

"forever waives, releases and relinquishes any right, title, interest or claim which he or she has or may hereafter have, pursuant to the provisions of the Probate Act of 1975 (755 ILCS 5/2-8), or pursuant to any present or future law of the state of Illinois or any other state *** to elect to take against the Last Will and Testament of the other, including any last Will and Testament now executed or which may hereinafter be executed, or any disposition of any kind and nature made by the other during his or her lifetime or otherwise."

The prenuptial agreement classified property acquired during marriage as "marital property, other than that specifically excepted herein, and shall pass upon the death of the parties hereto according to the laws of descent and distribution of the State of Illinois." The agreement further stated,

"That each of the parties hereto shall refrain from any action or proceeding which may tend to avoid or nullify to any extent or in any particular the terms of any Last Will and Testament of the other." The prenuptial also stated that each party

"waives the right to Letters of Administration in the other's estate and also waives all statutory allowances of any kind by provision of the Illinois Probate act of 1975 (755 ILCS 5/15-1) as such section now exists or may hereafter be amended ***. This provision shall not be construed as preventing either of the parties hereto from appointing the other as Executor of his or her estate."

¶ 10     On August 10, 2023, Karen, as executrix, filed a motion to dismiss Angela's petition to adjudicate the rights of the parties arguing that the petition was insufficient in law and failed to state a cause of action to which she could respond. It claimed that Angela was just unhappy with the will. On August 18, 2023, Angela argued that the motion to dismiss should be denied because there was an apparent disagreement over distribution of John II's estate. Following a hearing on November 17, 2023, the trial court denied Karen's motion to dismiss.

4

¶ 11    The parties submitted briefs on the adjudication of rights issue with Karen relying on *Logsdon v. Logsdon*, 412 Ill. 19 (1952) for the proposition that surviving children had no rights as third-party beneficiaries of antenuptial agreements. Karen stated the issue was whether a prenuptial agreement, entered 15 years after decedent's last will and testament was executed, rendered bequests to the widow prior to marriage invalid. Angela disputed the issue, as set forth by Karen, and stated she was merely requesting the court review the will and adjudicate the rights of the parties as they related to the estate assets. Angela agreed that both the will and prenuptial agreement were valid. She relied on *Kroell v. Kroell*, 219 Ill. 105 (1905) which determined that parties could enter into antenuptial contracts that established their marital property rights.

¶ 12    On March 12, 2024, Angela filed a motion to compel a current inventory and accounting. On April 15, 2024, the trial court issued an order requiring Karen to file a report and accounting within 14 days.

¶ 13    On April 29, 2024, Karen filed an updated accounting for the "financial activities of the Estate." The accounting listed "income to the estate" as the bank accounts held at First Southern Bank ($103,380.49), SIU Credit Union ($61,372.01), and Legence Bank ($10,352.04) and as "personal funds of executor spent on behalf of the estate" in the amount of $49,322.21 for total income of $224,426.75. Disbursements totaled $34,742.40 (including Karen's attorney fees). The accounting then listed the "balance in the estate account at Southern Trust Bank" as $189,684.35 and listed the other assets of the estate as the marital home at 1605 W. Copeland appraised at $69,000 and household furnishings with an estimated value of $1,000.

¶ 14    On May 8, 2024, the parties presented argument on the petition to adjudicate rights of the parties. Angela's counsel conceded that both the prenuptial agreement and the will were valid and enforceable documents. He stated the issue was the interrelation of those two documents. He

5

averred that the prenuptial agreement listed both parties' assets and that paragraph 3 of the prenuptial agreement stated that each party had no right, title, or interest in the separate property and waived the right to elect against the will. He further averred that paragraph 8 of the prenuptial agreement stated that each party could give property by will. Angela argued that John II's will was problematic because it provided specific bequests but did not state how the residuary would be distributed. Angela argued that the items that were contained in the inventory of the estate were not specifically distributable under the will, and therefore, those items should be distributed through the intestate provisions of the Probate Act. Angela argued that typically, that would result in giving one-half to Karen and one-half to the children; however, the prenuptial agreement barred Karen from taking anything under the will.

¶ 15    In response, Karen argued that the court was required to follow *Logsdon* because it was an Illinois Supreme Court decision and that Angela was claiming to be a third-party beneficiary to the prenuptial agreement when no such right existed in law. Karen argued that the will should dispose of the gifts and then divide the remainder of the estate in accordance with the laws of descent and distribution because John II did not change his will. Karen's attorney agreed that the will was valid as to the specific bequests. He further agreed that the prenuptial agreement was a contractual right between the decedent and the surviving spouse. Both parties agreed that the prenuptial agreement permitted the parties to change their wills and there was no known change to the 1991 will. They further agreed that the only real issue of disagreement was with the remaining assets that were not part of the specific bequests in the 1991 will. Karen claimed the prenuptial agreement did not bar her from taking her regular intestate succession for the residuary. Angela argued that Karen was barred by the prenuptial agreement. Karen also argued that she was

6

not bound by the prenuptial agreement because John II died and she was only bound to John II personally.

¶ 16    The trial court asked if there was any other residuary other than the real estate. Angela argued that the estate inventory was the "home and those three accounts" and "the entire estate passes through the residuary distribution" except for the specific bequests in the will. Angela stated that the real estate was listed in the prenuptial agreement as John II's separate property and the specific bank accounts were not listed in either the will or the prenuptial agreement. Karen argued that Angela's argument was "specious" because the 1991 will did not speak of the contents of the estate on the date of John II's death. She argued that people did not keep the same car, live in the same house, or keep the same amount of money in the same bank. She stated, "We're reporting as the estate on what was the value of John Robinson [II] at the time of his death in October of 2022." Karen argued that the "intestate succession should be followed, 50 percent to the surviving spouse and 50 percent to the two children." Angela stated that Karen waived her right to any intestate distribution in the 2006 prenuptial agreement. Karen argued that any contractual obligations under the prenuptial agreement died with John II.

¶ 17    Following arguments, the court listed the parties agreements, their disagreements, and the court's order. The first seven agreed facts stated:

> "1. The last will and testament of John C. Robinson, II, dated 12/6/1991 stands as a valid last will and testament. 2. The pre-nuptial agreement dated 12/26/2006 was valid and a contract between John C. Robinson II and Karen Walrack n/k/a Karen Robinson[.] 3. That the pre-nuptial permitted existing wills to stand as executed. 4. That the pre-nuptial agreement permitted the parties to execute new wills or alter existing wills, John Robinson did not execute a new will, nor alter his existing will. 5. That the will stands and distribution

7

of the listed assets shall be as provided for in the will. 6. That the will's [*sic*] states there is a residuary clause, but it is not a true 'residuary clause' and doesn't allocate or distribute the residuary of the estate."

After the court read each of those agreed facts, both attorneys stated their agreement therewith.

¶ 18    When the court reached paragraphs 8 and 9, the following colloquy transpired:

"THE COURT: Okay. That there remains a residuary of the estate not covered by the will, that the residuary of the estate consists of—and I list what was in the inventory— the account at Legence Bank, the account at First Southern Bank, the account at SIU Credit Union, household furniture and furnishings, personal possessions, and real estate located at 1605 West Copeland in Marion.

Last—and I know there's a 'but' on this, which I'll cover in just a minute—when the will does not have a residuary clause, the residuary passes under the laws of intestacy.

[ANGELA'S ATTORNEY]: That's correct.

THE COURT: And I know you have a 'but' on that. But I find that you disagree as to, one, whether the Pre-Nuptial Agreement should continue to determine Karen Robinson's rights and obligations given the death of one of the parties to the agreement, namely John Robinson. That's an area of disagreement, correct?

[ANGELA'S ATTORNEY]: That's correct—

[KAREN'S ATTORNEY]: Yes, Your Honor.

✱✱✱

THE COURT: I think a key area as well. And the other key area: whether the Pre-Nuptial Agreement prevents Karen Robinson from taking the residuary under the laws of intestacy. Is that a fair summary of the other item of disagreement?

8

[KAREN'S ATTORNEY]: Pretty much.

[ANGELA'S ATTORNEY]: Yes, Judge."

¶ 19 Thereafter, the court issued its ruling stating, "First I find that the Pre-Nuptial Agreement survives the death of John Robinson [II], and Karen Robinson remains bound by the agreement she made in that Pre-Nuptial Agreement. To find otherwise would mean that no Pre-Nuptial Agreement could contain statements regarding probate and the estates and what happened."

¶ 20 The trial court issued a docket entry order listing the statements of agreement, disagreement, and its ruling. With regard to its rulings, the court noted that Karen relinquished and waived rights and title in the property and any right to any claim under the Probate Act in the prenuptial agreement. It further noted that Karen agreed the property acquired both before and after marriage, remained the property of the person who purchased the property and released claim thereto. The court found that the property in Exhibit A of the prenuptial agreement was John II's personal and individual property and the prenuptial agreement prevented Karen from taking that property by intestate succession. The court found that the "accounts at Legence Bank, First Southern Bank, and SIU credit union are separate property of John C. Robinson, as contemplated by paragraph 9, and *** the pre-nuptial agreement prevents Karen Robinson from 'taking' that property in intestate succession. See pre-nuptial agreement, paragraph 3." The remainder of the court's order allowed Karen to retain her personal household furniture, furnishings, and personal possessions, but found the same items that belonged to John II could not be taken by Karen by intestate succession due to the prenuptial agreement.

¶ 21 On May 29, 2024, Karen filed a motion to reconsider. The pleading contended that the trial court erred in its determination that the prenuptial agreement barred Karen, as the surviving signatory, from owning separate property of John II and failed to take into account the language

9

in paragraph 8 of the prenuptial agreement that said nothing in the agreement should be construed to bar either of the "parties hereto to the giving of any property to which he or she may be seized or possessed to the other party by Last Will and Testament or otherwise." It argued that John II awarded Karen all of his accounts in Exhibit A, alleging that the amounts from the 401k was the amount in the bank accounts listed at First Southern Bank and SIU Credit Union. It argued that Karen was entitled to those funds as a beneficiary, not as a surviving spouse.

¶ 22    On June 4, 2024, Angela responded to the motion to reconsider citing *In re Marriage of Whitehead*, 2018 IL App (5th) 170380, ¶ 44. Angela argued that Karen met none of the three possible purposes of reconsideration, *i.e.*, newly discovered evidence, change in the law, or error in the court's earlier application of the law, and requested denial of the reconsideration.

¶ 23    On July 16, 2024, Karen moved for leave to amend the motion to reconsider because the transcript from the hearing was not yet available and the transcript would clarify the motion. On July 17, 2024, Angela filed a response arguing that Karen was not an interested party and the fact that no transcript was requested until 68 days after the court entered the order did not show diligence. Angela requested denial of the motion for leave to amend. A hearing on the motion to amend was held on July 23, 2024. Following the hearing, the trial court granted the motion and issued an order setting forth the time for filing the amended motion.

¶ 24    On August 12, 2024, the amended motion to reconsider was filed. Therein, Karen argued that the court erred in finding the executor agreed that the estate's inventory was the same as the estate's residuary because the executor never expressed such an agreement and argued to the contrary at the hearing. Karen further argued that the 401k funds, consisting of $289,327.27, in the prenuptial agreement correlated with the amounts in the bank accounts, claimed the funds in the bank accounts were the result of the withdrawal of the 401k funds, and evidence related to the

10

funding of the bank accounts with the 401k funds could be presented at a future hearing. The motion also argued that the court erred in finding that paragraph 3 of the prenuptial agreement barred Karen from receiving her specific bequest in the will. In support, she argued that the prenuptial agreement did not revoke the will and paragraph 1 of the will should be given full effect, allowing Karen to take her specific bequest afforded in the will.

¶ 25    On September 3, 2024, Angela filed a response to the motion to reconsider, again arguing that the motion failed to establish newly discovered evidence, change in the law, or error in the court's earlier application of the law. Angela further argued that Karen lodged no objection to any of the agreed facts during the court's oral recitation of the agreed facts following argument on the petition to adjudicate rights of the parties. She also argued that any claim related to Karen's proposed submission of evidence related to the 401k funds at a future hearing was not supported by affidavit and such claim or evidence related to the 401k funds was not provided in discovery. The response further argued that the court provided Karen with the specific bequests.

¶ 26    A hearing on the motion to reconsider was held on September 18, 2024. Following the hearing, the court orally denied the motion. The court's written docket entry stated:

> "This court clarifies it never made any finding that the prenuptial agreement invalidated the will, nor that the prenuptial agreement invalidated specific bequests in the will (here section V(a)). In fact, no party has argued that the prenuptial agreement invalidated the will, nor precluded decedent from making specific bequests to Karen Robinson.
>
> However, the Legence Bank Acct, First Southern Bank Acct, and the SIU Credit Union Acct are not listed in the specific bequest section V(a). Court finds that although there was no specific agreement [by Angela's attorney] during argument that the estate

11

'residuary' contained Legence Bank, First Southern Bank, and the SIU Credit Union accounts, the court's prior ruling stands as it found that those 3 accounts were not specific bequests, and therefore must be deemed the 'residuary' estate.

This court also finds that prior rulings stand:

1. That there is no true 'residuary clause' distributing the residuary of the decedent's estate; 2. That the residuary of the estate passes through laws of intestacy; 3. That the prenuptial agreement precludes Karen Robinson from taking any assets of decedent under the law of intestacy, and therefore, precludes her from taking the residuary, including those 3 accounts.

All other aspects of this court's ruling (not otherwise clarified) stand as the ruling of the court. Additionally, any argument that the 3 accounts might be able to be traced to specific bequests is extremely speculative (as there is no knowledge regarding the existence of any information regarding that theory). No legal authority has been presented that such tracing would be appropriate in this matter. Further, such argument is not proper for a motion to reconsider if it was evidence that existed at the time of the prior hearing, but was not presented to the court at the time of the initial hearing. Motion to reconsider denied."

Karen timely appealed.

¶ 27                                  ANALYSIS

¶ 28    Karen raises two issues on appeal. She argues that the trial court erred by finding she agreed that the bank accounts were part of the residuary when neither party presented evidence to support that finding. We review a trial court's findings under a manifest weight of the evidence standard. *In re Estate of Ferguson*, 313 Ill. App. 3d 931, 938 (2000). Under the manifest weight of the evidence standard, the trial court's factual findings will only be overturned where " 'an opposite

12

conclusion is clearly apparent or the fact-finder's finding is palpably erroneous and wholly unwarranted.' " *Kulchawick v. Durabla Manufacturing Co.*, 371 Ill. App. 3d 964, 969 (2007) (quoting *Joel R. v. Board of Education of Mannheim School District 83*, 292 Ill. App. 3d 607, 613 (1997)).

¶ 29    Karen argues that while Angela's attorney agreed with all of the trial court's findings related to "agreed facts," Karen only agreed with the first seven agreed facts presented. She stated that her position was that the accounts were not part of the residuary, the funds contained therein were from the retirement accounts specifically bequeathed to her under the will, and if she was afforded the opportunity, she would show that the funds in the bank accounts were derived from the retirement accounts.

¶ 30    Karen's argument is difficult to reconcile when considered in conjunction with her court filings. Karen's inventory listed the three bank accounts as those of the estate. The April 6, 2023, inventory stated, "Now comes the Executor, Karen (Walrack) Robinson, by Bernard A. Paul, her attorney, and presents her *inventory of the real estate and personal property the decedent* that has come to her knowledge, as follows:" (emphasis added). Thereafter, Karen listed the bank accounts at Legence Bank, First Southern Bank, and the SIU Credit Union, along with household furniture and furnishings, personal possessions and the real property on Copeland. She listed the approximate value of the personal estate of the decedent as $175,000. These same items were included in the April 29, 2024, inventory and accounting "of the financial activities of the Estate." The three bank accounts at First Southern Bank, SIU Credit Union, and Legence Bank were listed as "Income to the Estate." Further after the disbursements were subtracted, the accounting listed the "Balance in Estate Account" as $189,684.35. The "Other assets of the Estate" included the home at 1605 W. Copeland and the household furniture and furnishings located in the home.

13

¶ 31     Essentially Karen is asking this court to now find that the bank accounts were not part of John II's estate, despite filing inventories and accountings with the court stating they were. Equally concerning is the fact that, despite Angela repeatedly stating that the estate inventory was all part of the residuary, at no point during the hearing did Karen present any argument that the estate inventory was not the residuary or argue that any portion of the inventory was not part of the residuary. We further note that Karen's attorney did not even object to the court's statement of agreement regarding the residuary. Instead, Karen argued that she was not bound by the prenuptial agreement because John II was now deceased and she was entitled to one-half of the residuary under the laws of intestacy.

¶ 32     While Karen presented an argument that vehicles change, people move, and amounts in a bank account may change over time or even move to a different bank, no argument was ever presented that the funds in the "estate inventory" included funds Karen received as beneficiary of John II's retirement account. For these reasons, even without Karen's express agreement, we cannot hold that the trial court's finding that the residuary of John II's estate was comprised of the estate inventory and would be distributed through intestacy principles was against the manifest weight of the evidence.

¶ 33     Karen also argues that the trial court's denial of her request for reconsideration and submission of future evidence related to the funding of the bank accounts was in error. We again disagree. As conceded by Karen, her request was not made on May 8, 2024, when the parties presented argument on the petition to adjudicate rights of the parties and was instead made as part of her reconsideration request.

¶ 34     "A motion to reconsider draws a trial court's attention to newly discovered evidence that was unavailable at the time of the first hearing, changes in the law, or errors in the previous

14

application of existing law to the facts of the case." *In re Marriage of Whitehead*, 2018 IL App (5th) 170380, ¶ 44. We review the trial court's decision on a motion to reconsider for an abuse of discretion. *Id.* "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41 (citing *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 114).

¶ 35    Here, Karen's contention that the evidence was "unknown" and therefore "new" has little merit. Any attempt to trace funds from a 401(k) to the bank accounts at issue would be based on records prepared at the time the retirement accounts were closed and placed into the bank accounts. As such, that evidence would have been available at the time of the hearing and no evidence was submitted to counter such conclusion. We further note that Karen's argument is further undermined by counsel's reconsideration argument that stated, "[T]here isn't really any evidence. There is just a hope for future hearing where that evidence might be presented." Given that concession, this court cannot hold that the trial court's denial of the requested reconsideration was an abuse of discretion.

¶ 36                              CONCLUSION

¶ 37    For the above-stated reasons, the trial court's order finding that the estate inventory and the residuary of John II's will were comprised of the same items and disbursing those items pursuant to intestacy provisions based on the lack of a proper residuary clause, is affirmed.

¶ 38    Affirmed.

15